UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **STATE OF LOUISIANA** | **CASE NO. 6:23-CV-00225** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **ABBVIE INC ET AL** | **MAGISTRATE JUDGE DAVID J. AYO** |

## REPORT AND RECOMMENDATION

Before this Court is PLAINTIFF'S MOTION TO REMAND filed by the State of Louisiana. (Rec. Doc. 26). Defendants filed an opposition (Rec. Doc. 30) to which the State replied (Rec. Doc. 31). The undersigned issues the following report and recommendation pursuant to 28 U.S.C. § 636. Considering the evidence, the law, and the parties' arguments, and for the reasons explained below, this Court recommends that the State's motion be GRANTED and that the instant case be REMANDED to the 27th Judicial District Court, St. Landry Parish, Louisiana.

### Factual Background

This case is the latest in a series of cases brought by the State of Louisiana against pharmaceutical companies alleging improprieties in the approval and marketing of prescription drugs. On January 23, 2023, the State filed a petition in the 27th Judicial District Court, St. Landry Parish, Louisiana against Warner Chilcott Limited; Warner Chilcott (US), LLC; Warner Chilcott Sales (US), LLC; Warner Chilcott Company, LLC; Warner Chilcott, plc; Watson Laboratories, Inc.; Actavis, Inc.; Allergan, plc; Abbvie, Inc.; and Lupin Pharmaceuticals, Inc. (Rec. Doc.

1

1-1 at ¶¶ 18-35). Through a series of transactions, Watson Pharmaceuticals acquired Actavis, Actavis acquired Warner Chilcott and Allergan, and Abbvie acquired Allergan. (*Id.* at ¶¶ 27-32).

The petition describes the regulation and approval of brand name drugs, the introduction of generic drugs, and the effect the introduction of generic drugs has on drug prices. (*Id.* at ¶¶ 39-82). Against that regulatory background, the State alleges that pharmaceutical companies "game" the regulatory structure and engage in unfair competition by delaying the introduction of cheaper generic drugs. The alleged anticompetitive actions include the following: the improper listing of unenforceable patents in the Food & Drug Administration's "Orange Book," a listing of all approved prescription drugs and the patents covering them (*Id.* at ¶¶ 94-99); the settlement of patent infringement suits via "pay for delay" or "reverse payment settlement agreements" whereby the brand name drug manufacturer pays a generic manufacturer and obtains a delay in introduction of the generic drug (*Id.* at ¶¶ 100-117); the use of "acceleration clauses" in settlement agreements (*Id.* at ¶¶ 130-134); the use of "product hops" whereby the brand name manufacturer modifies some characteristic of the drug, obtains FDA approval, and obtains market share for the new version of the drug before the generic version of the original drug is approved (*Id.* at ¶¶ 135-139).

The State's recitation of the evolution of Loestrin 24, a birth control drug, is exhaustive and need not be discussed in full detail here. In a nutshell, the petition alleges Warner Chilcott's improper listing of the patent for Loestrin 24 in the Orange

2

Book, the use of the active ingredients in Loestrin 24 and prior iterations of Loestrin since the 1970's, the unenforceability of the patent for Loestrin 24 due to fraud on the Patent & Trademark Office, the prosecution of a "sham litigation" patent infringement suit by Warner Chilcott against Watson to delay entry, the execution of an exclusion payment agreement between Warner Chilcott and Watson—including an acceleration clause—whereby the latter agreed to delay launching its generic version of Loestrin 24, the publication of the acceleration clause by Warner Chilcott and Watson to deter other manufacturers from entering the generic market, Warner Chilcott's prosecution of "sham litigation" against Lupin, Warner Chilcott and Lupin's execution of an exclusion payment agreement, Warner Chilcott's prosecution and settlement of an infringement suit against Mylan (another generic manufacturer), the "product hop" from Loestrin 24 to Minastrin 24 in order to preclude pharmacists from filling prescriptions for Minastrin 24 with a generic Loestrin 24, and Warner Chilcott's withdrawal of Loestrin 24 from the market resulting in the prescription of Minastrin 24 to impair generic competition. The effect of these anticompetitive measures to suppress the competition of generic Loestrin 24 is summarized as follows:

> Warner Chilcott's overarching anticompetitive scheme, and the Generic Defendants' participation in it, delay and substantially diminished the sale of generic Loestrin 24 in the United States, and unlawfully enabled Warner Chilcott to sell Loestrin 24 drugs at artificially inflated prices. But for Defendants' illegal conduct, generic manufacturers would have been able to enter the market unimpeded and compete on the merits against Loestrin 24. Generic competitors would also have been able to compete earlier, as early as September 2009, and additional generic competitors would have entered the market thereafter. Defendants' conduct unlawfully prevent purchasers of

3

Loestrin 24 drugs from obtaining the benefits of unimpaired generic competition.

(*Id.* at ¶ 320). During the time that the alleged anticompetitive measures were undertaken, the State alleges that it had purchased substantial amounts of Loestrin 24 and was forced to pay artificially inflated prices for it due to the unavailability of cheaper generic versions. (*Id.* at ¶¶ 346-357). The State asserts causes of action for violation of the Louisiana Monopolies Act, La. R.S. § 51:121 *et seq.*, (*Id.* at ¶¶ 366-376); violation of the Louisiana Unfair Trade Practices Act, La. R.S. § 51:1401, *et seq.* (*Id.* at ¶¶ 377-381); violation of the Louisiana Medical Assistant Programs Integrity Law, La. R.S. § 46:437.1, *et seq.* (*Id.* at ¶¶ 382-389); and an alternative cause of action for unjust enrichment (*Id.* at ¶¶ 390-397) for which the State seeks, *inter alia*, treble damages (*Id.* at ¶¶ 399-404).

The instant motion seeks remand to state court. The State contends that none of the federal interests referenced in the Notice of Removal suffice to confer jurisdiction under *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), nor is patent law implicated in its claims. As such, the State asserts that 28 U.S.C. §§ 1331 and 1338 do not confer subject matter jurisdiction on this Court.

## Law and Analysis

A defendant may remove a civil action filed in state court if a federal court would have original jurisdiction over the suit. 28 U.S.C. § 1441(a). The removing party bears the burden of showing that federal jurisdiction exists. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) (noting that "it is well settled

that the removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists."). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

Federal courts have subject matter jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Whether a claim arises under federal law must be determined by referring to the "well-pleaded complaint." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S 804, 808 (1986). *See also Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Under this standard, a federal question must appear on the face of the complaint. *Torres v. S. Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997). Since a defendant can remove a case to federal court only if the plaintiff could have brought the action in federal court in the first place, "the question for removal jurisdiction must also be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow*, 478 U.S. at 808.

When a plaintiff does not assert a cause of action created under federal law, federal question jurisdiction exists only if an exception to the well-pleaded complaint rule applies. Here, Defendants rely on *Grable, supra*, to argue that the "federal issues necessarily form the basis of Plaintiff's claims—without the federal issues, Plaintiff's allegations could not and would not exist—and support removal under *Gunn/Grable* for multiple reasons." (Rec. Doc. 30 at 4). In *Grable*, the Internal Revenue Service had seized the plaintiff's property to satisfy a tax delinquency and had sold the property to the defendant. 545 U.S. at 310. The plaintiff filed suit in state court to

quiet the title to the property alleging that the defendant's title was invalid, and the defendant removed the suit. *Id.* The plaintiff had premised the superior title claim on the IRS's failure to give the plaintiff adequate notice of the sale to the defendant as required by federal law. *Id.* at 314. The Supreme Court found that whether the plaintiff "was given notice within the meaning of the federal statute" was "an essential element of its quiet title claim, and the meaning of the federal statute [was] actually in dispute." *Id.* Finding federal question jurisdiction, the Court observed that the meaning of the federal tax provision was an important issue that belonged in federal court. *Id.* The Court noted the government's interest in "prompt and certain collection of delinquent taxes" and the "IRS's need for certainty in notice requirements to provide buyers of seized property assurance that the IRS has taken all steps required to convey good title." *Id.*

Subsequent to *Grable*, the Supreme Court has held that only a "slim category" of cases will fall under the *Grable* standard. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006). The presence of a federal issue "does not automatically confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 813. *See also Gully v. First Nat'l Bank*, 299 109, 115 (1936) ("Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit."). Under *Grable*, a court can exercise federal question jurisdiction under limited circumstances when "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial

6

responsibilities." *Singh v. Duane Morris, LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (citing *Grable*, 545 U.S. at 314).

The question becomes an identification of federal issues within the state law causes of action. Defendants do not dispute that the State's petition seeks relief only under state law but contend that the Court will have to resolve important and disputed federal issues. They note that the petition included over 500 references to federal statutes, patents, rules, agencies, and actions. (Opposition, Rec. Doc. 30 at 9). While this Court has not confirmed Defendants' tally, they are correct that the petition is replete with references to federal law.

This Court finds that Defendants have not met *Grable*'s requirements to establish jurisdiction based on a substantial federal question. The petition clearly seeks relief solely under state law. While it no doubt extensively cites federal statutes and regulations, these references are evidence of the alleged violations of state law. A plaintiff's reference to a federal regulation "merely as further evidence of the right to recover under state law" does not confer federal question jurisdiction. *See Till v. Unifirst Fed. Savings & Loan Ass'n*, 653 F.2d 152, 155 n.2 (5th Cir. 1981). *See also Longitude 150, LLC v. McGee*, 2022 WL 16942239 at *4 (W.D. La. Oct. 27, 2022) (citing *Till*); *Equilibrium Catalyst, Inc. v. Scallan*, 2021 WL 4076475 at *4 (W.D. La. July 28, 2021) (same).

The Court also notes that pharmaceutical companies have made similar arguments to no avail in Louisiana federal district courts in suits by the State

alleging anticompetitive schemes.[1]  The State cites those cases and Defendants vigorously distinguish them.

In *State of Louisiana v. SmithKline Beecham Corp.*, 2016 WL 452318 (M.D. La. Feb. 5, 2016), the State alleged that a pharmaceutical company manipulated FDA administrative procedures to delay the introduction of a generic version of Flonase. The company allegedly filed baseless citizen petitions to prevent or delay entry of the generic version, causing the State to pay more for Flonase than it otherwise would have paid.  After removal, the State moved to remand and the defendant argued similarly to Defendants here that its conduct implicated "a number of federal statutes and regulations and the FDA's implementation thereof." 2016 WL 452318 at *2.  In granting remand, Judge Jackson explained:

> In sum, while Defendant's alleged conduct "may be assessed against the backdrop of federal regulation," the linchpin of Plaintiff's action is whether Defendant's conduct independently violated Louisiana law.  **Looking beyond the importance of any federal regulatory issues to the parties, and instead focusing on the federal system as a whole, the Court finds that Plaintiff's state law claims do not rest on embedded federal issues that are substantial under *Grable*.**  It follows that Defendant has not demonstrated that this case needs to be heard in federal court to prevent disruption of the federal-state balance; any decision will have no precedential effect on federal law.  And finally, while perhaps significant to Plaintiff's claims, a determination of whether Defendant abused the citizens petition process does not require "the experience, solicitude, and hope of uniformity that a federal forum offers."

*Id.* at *5 (citations omitted & emphasis added).  The same can be said here.

---

[1] This conclusion is not unique to Louisiana.  *See, e.g., State of Texas v. AstraZeneca, L.P.*, 2015 WL 13810532 (W.D. Tex. Mar. 30, 2015) (granting remand in suit where State of Texas alleged that unlawful promotion of Seroquel antidepressant drugs resulted in excessive reimbursements for the drugs by the Texas Medicaid program).

In *State of Louisiana v. AstraZeneca AB*, 2015 WL 5813342 (M.D. La. Sept. 14, 2015), the State alleged that AstraZeneca had improperly listed the patents for Toprol-XL in the Orange Book and had engaged in baseless patent infringement litigation against generic manufacturers. The State asserted similar state law causes of action as it asserts in the instant case and alleged damages based on the increased price it had to pay for Toprol-XL versus the price it would have paid for a generic equivalent. AstraZeneca removed and the State moved to remand. In recommending remand, Magistrate Judge Bourgeois noted that "any necessarily raised and disputed questions of law are not substantial." 2015 WL 5813342 at *6.

In *Caldwell v. Bristol Myers Squibb Sanofi Pharm. Holding P'ship*, 116 F. Supp. 3d 727 (W.D. La. 2015), the State filed suit in the 27th Judicial District Court (as it did here) alleging that the defendants had used false and misleading advertising to promote the sale of Plavix, resulting in the State's purchase of that drug for Medicaid patients for whom it should not have been given. After removal, the State moved to remand. Judge Minaldi granted remand and found that no actually disputed federal law issue had to be decided and no substantial federal issue was presented. This Court acknowledges that the alleged improper conduct in *Caldwell* is not presented in the instant case, but the case is relevant to demonstrate that the Western District's treatment of the jurisdiction question in suits by the State against pharmaceutical companies squares with the treatment of the issue in the various Middle District cases decided before and after.

9

In *State of Louisiana v. Abbott Labs.*, 2014 WL 4924329 (M.D. La. Sept. 30, 2014), the State sued 54 pharmaceutical companies and alleged a scheme to cause the State to pay more for drugs without FDA approval but which were marketed as approved and reimbursable by Medicaid. Judge Jackson adopted Magistrate Judge Riedlinger's report and recommendation, which summarized its analysis as follows:

> Just as in *Grable* and *Merrell Dow*, the federal laws relied on by the defendants do not provide federal causes of action. Nor do any of the federal laws involved preempt state law remedies. These two factors are important indications that Congress did not intend a federal forum for state causes of action that implicate the federal laws and regulations on which defendants rely.

2014 WL 4924329 at *6 (citations omitted). Again, the same can be said here.

Finally, in *State of Louisiana v. Pfizer, Inc.*, 2014 WL 3541057 (M.D. La. July 17, 2014), the State alleged that Pfizer had engaged in deceptive activity in the sale of Zoloft by causing thousands of false claims to be made to the State by manipulating Zoloft's efficacy and concealing that efficacy to physicians, customers, and the State. In recommending remand, Magistrate Judge Bourgeois presciently observed:

> The State has brought state law claims under MAPIL, LUTPA, redhibition, fraud, negligent misrepresentation, and unjust enrichment. Even assuming that these claims may require the state court to determine the federal standards for prescription drug approval and labeling, allowing these state law claims to create federal question jurisdiction in the absence of a federal cause of action would result in the removal of nearly any action by a state's attorney general against a pharmaceutical company regarding prescription drugs.

2014 WL 3541057 at *9.

All of the cases above analyzed federal question jurisdiction under *Grable*. The State obviously alleged only state law causes of action in all of them. The

pharmaceutical company defendants in all of those cases removed to federal court and asserted federal question jurisdiction. The State asserted many of the same causes of action in those cases as it does in this case. Defendants are quite correct that the cases are distinguishable on their facts—after all, the development, approval, marketing and sale of prescription drugs is a very complex process—and they go to great lengths to argue that they are inapposite. The alleged improper listing of the patent for Loestrin 24 in the Orange Book, the pursuit of allegedly "sham litigation," and the alleged "product hop" from Loestrin 24 to Minastrin 24 are purported to constitute unfair methods of competition *under state law*. The State's allegations do not establish that a court will have to resolve whether any federal law or regulation was violated as a predicate for resolving the state law claims. Rather, the alleged violations are evidence of anticompetitive activity and will not require the invalidation of any patent or unwinding of any federal regulatory actions.

Under the circumstances of this case, the Court sees no reason to arrive at a different conclusion than in the cases discussed above. Defendants have failed to point to a disputed and substantial federal issue requiring resolution; therefore, the undersigned is compelled to conclude that this Court lacks federal question jurisdiction.

## Conclusion

For the reasons discussed herein, the Court recommends that PLAINTIFF'S MOTION FOR REMAND (Rec. Doc. 26) be GRANTED and that the State of Louisiana's

11

suit be REMANDED to the 27th Judicial District Court, St. Landry Parish, Louisiana.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers on this 28th day of March, 2024.

_____
David J. Ayo
United States Magistrate Judge